# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| Tracy L.,<br><br>  Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security[1],<br><br>  Defendant. | Case No.  1:20-CV-00002-REP<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**(Dkts.  1, 5 & 20)** |

Pending is Petitioner Tracy L.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 20) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a woman in her early fifties who alleges that she is unable to work due to a constellation of physical and mental problems, including anxiety, depression, bipolar disorder, and pain in her back, wrist, and knee.  AR[2] 23; *see also* Pt.'s Br. at 1 (Dkt. 20).  On May 13, 2016, Petitioner filed an application for social security disability income ("SSDI") as well as an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 18).

**MEMORANDUM DECISION AND ORDER - 1**

application for supplemental security income ("SSI"), alleging a disability onset date of February 15, 2016.  AR 141, 404.  At the time she submitted the request, however, Petitioner was working as a custodian for D&D Maintenance Supply.  AR 173, 366.  Because this was considered substantial gainful employment, Petitioner's claim was consequently denied.  AR 173, 449.

On January 30, 2017, Petitioner filed another claim for disability insurance benefits asserting an amended disability onset date of January 1, 2017.  AR 174-175.  Shortly thereafter, Petitioner stopped working.  Her last day of employment was February 9, 2017.  AR 454.

The Social Security Administration reopened and re-reviewed Petitioner's claim at the initial level.  AR 174-215.  The claim, however, was once again denied and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  AR 18, 194, 215.  On April 5, 2018, the claim went to a hearing before Administrative Law Judge ("ALJ") Christopher Inama.  AR 18.  At the hearing, Petitioner agreed to further amend her onset date to February 9, 2017, her last day of employment.  AR 20, 109.  Even with this change, the ALJ issued a decision that was unfavorable to Petitioner.  AR 18-30.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises a single point of error, related solely to the ALJ's assessment of her mental health functioning.  Specifically, Petitioner argues that the ALJ did not provide legitimate reasons for rejecting the opinions of Nurse Practitioner Jeremiah Neibling, Petitioner's primary mental health treatment provider from July 2017 through February 2018.  Pt.'s Br. at 1 (Dkt. 20).

**MEMORANDUM DECISION AND ORDER - 2**

**STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable

weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 4**

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate

**MEMORANDUM DECISION AND ORDER - 5**

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do

other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments:

degenerative disc disease, dysfunction of her major joints, osteoarthritis, affective disorder,

anxiety disorder, personality disorder, and obesity.  AR 20.  The ALJ determined that these

impairments affected Petitioner's ability to engage in work-related activities in a variety of

manners, including that Petitioner "is limited to simple, routine tasks and simple work-related

decisions[s], with few workplace changes; occasional interaction with supervisors and

coworkers, with no tandem tasks; and no contact with the public."  AR 23.  Despite these

limitations, the ALJ found that Petitioner could perform a range of light work, including working

as an electronics worker, office helper, and mail clerk.  AR 23, 30.  The ALJ, therefore, found

that Petitioner was not disabled.  AR 30.

## DISCUSSION

I.  Nurse Neibling's Treatment and Opinions

Petitioner's only challenge on appeal is to the ALJ's treatment of the opinions of her

most recent mental health care provider, Nurse Practitioner Neibling.  Nurse Neibling is a board

certified Psychiatric Mental Health Nurse Practitioner who works at St. Luke's Behavioral

Health Clinic.  AR 1345, 1193-1225.  Petitioner began seeing Nurse Neibling for treatment in

late July 2017 after Petitioner moved from Michigan to Idaho.  AR 1193.

**MEMORANDUM DECISION AND ORDER - 6**

At the initial visit, Nurse Neibling spoke with Petitioner about her psychiatric symptoms, current medications, and mental health history.  AR 1193-1195.  Petitioner reported symptoms of depression (low mood, low energy, increased sleep, feeling tired "all the time," and long-standing, but intermittent suicidal ideation), anxiety (constant, but low level), post-traumatic stress disorder ("PTSD") (prominent nightmares and flashbacks, an exaggerated startle response, and rapid mood changes), and a history of mania.  AR 1193-1194.  Her mental status exam revealed no paranoia, delusions, or hallucinations.  AR 1196.  She was alert and oriented, had linear thoughts, and fair insight, judgment, and motivation for treatment.  Her mood, however, was depressed.  *Id.*  Based on the evaluation, Nurse Neibling diagnosed Petitioner with bipolar disorder, PTSD, and generalized anxiety disorder.  AR 1197.  Nurse Neibling modified Petitioner's medication regime to "reduce polypharmacy" and to address her symptoms.  This included increasing medication to treat Petitioner's depression adding a new medication to treat her nightmares and help with sleep.  AR 1196.

Over the course of the next seven months, Nurse Neibling saw Petitioner regularly (seven times total, approximately once a month) to monitor Petitioner's care and adjust her medications as needed.  AR 1199-1225.

At the end of this period, on February 23, 2018, Nurse Neibling completed a Mental Medical Assessment Form documenting his opinions about Petitioner's mental health diagnoses and functioning.  AR 1346-1351.  On this form, Nurse Neibling confirmed that Petitioner had a bipolar diagnosis and struggled with background anxiety, daily panic attacks, and depression.  AR 1346, 1348.  Nurse Neibling explained that Petitioner had tried "multiple" medication trials for these conditions and had "partially responded," but was still having "problematic symptoms."  AR 1346.  According to Nurse Neibling, Petitioner's symptoms included, among other things,

thoughts of suicide, generalized and persistent anxiety, impairment in impulse control, flight of

ideas, difficulty thinking or concentrating, distractibility, sleep disturbance, and recurrent severe

panic attacks.  AR 1346-1347.

Nurse Neibling opined that while these conditions caused some limitation in all work-

related mental domains, Petitioner retained a "satisfactory" ability to remember work procedures;

understand, remember, and carry out very short and simple instructions; sustain an ordinary

routine without special supervision; work in proximity to others; make simple work-related

decisions; perform at a consistent pace; get along with co-workers; and maintain socially

appropriate behavior.  AR 1347-1349.  Nurse Neibling determined that Petitioner was more

"seriously" limited in the following domains: maintaining attention for two-hour segments;

maintaining regular attendance and punctuality; completing the workday without interruptions

from psychological symptoms; asking simple questions or requesting assistance; responding

appropriately to criticism from supervisors; responding to changes; dealing with stress; and

interacting with the general public.  *Id.*  The only domain where Nurse Neibling found Petitioner

completely unable to meet competitive work standards was in using public transportation.  AR

1349.

Nurse Neibling summarized these conclusions into a finding that Petitioner had marked

limitations in both her ability to maintain social interactions and her ability to maintain

concentration, persistence, or pace.  AR 1350.  Nurse Neibling estimated that Petitioner's

impairments would cause her to miss work four to eight days per month and to be off-task

approximately 15% of the day.  AR 1351.

As to the duration of these conditions, Nurse Neibling indicated that, generally speaking,

Petitioner's impairments could be expected to last at least 12 months, but also explained that her

**MEMORANDUM DECISION AND ORDER - 8**

prognosis was "fair to good in time with therapy for trauma [history] and continued optimization of meds."  AR 1346, 1350.

II.  <u>The Standard for Reviewing the Opinions of Nurse Practitioners</u>

The regulations that guide an ALJ's evaluation of medical opinion evidence have long distinguished between medical providers who are considered "acceptable medical sources" and "other" medical sources.  *See* 20 C.F.R. §§ 404.1513(a) and (d) (2013) (defining the terms "acceptable medical sources" and "other" sources prior to the 2017 amendments to the regulations); 20 C.F.R. §§ 404.1502(a) and (d) (defining the terms "acceptable medical source" and "medical source" after the 2017 amendments).

On January 18, 2017, the Social Security Administration published comprehensive revisions to these regulations.[3]  *See* 82 Fed. Reg. 5844.  Because Petitioner's claim was filed before March 27, 2017, but the ALJ did not issue his opinion after March 27, 2017, the rules governing the ALJ's treatment of Nurse Neibling are found in 20 C.F.R. §§ 404.1527(f) and 416.927(f).[4]  Petitioner concedes that Nurse Neibling is considered a non-accepted or "other"

---

[3] These amendments expanded the category of providers who qualify as "acceptable medical sources." 20 C.F.R. §§ 404.1502(a).  They also dismantled all but two of the programmatic distinctions between "acceptable medical sources" and all other medical sources.  *See* 82 Fed. Reg. 5844, 5844-5845; *see also* 20 C.F.R. § 404.1520c.  As Petitioner acknowledges, however, the old, not the new regulations apply to this case.  Pt.'s Br. at 16 (Dkt. 20).

[4] Prior to the 2017 amendments, the regulations did not specifically address how an ALJ should consider relevant opinions from other non-accepted medical sources.  Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3 (August 9, 2006).  To fill this gap, the Social Security Administration issued SSR 06-03p, which directed ALJs to use the same factors used to evaluate the opinions of non-accepted medical providers as those used to evaluate acceptable medical source opinions.  *Id.*  This ruling was rescinded with the passage of the 2017 amendments.  *See* 82 Fed. Reg. 5844, 5845.  But its substance was not lost.  In order to provide clear and comprehensive guidance regarding the consideration of "other" medical sources for claims filed before March 27, 2017, the Social Security Administration revised 20 C.F.R. §§ 404.1527 and 416.927, effective March 27, 2017, to incorporate the policies formerly found in SSR 06-03p.  *See* 20 C.F.R. §§ 404.1527(f) and 416.927(f).  These revised rules govern Petitioner's claim.

**MEMORANDUM DECISION AND ORDER - 9**

medical source under these rules.  Pt.'s Br. at 17 (Dkt. 20); *see also* 20 C.F.R. §§ 404.1502(a)(7)

(advanced practice nurses are only considered acceptable medical sources for claims filed after

March 27, 2017).

As such, Nurse Neibling's opinions were entitled to less deference than those of a

treating or examining doctor.  *Revels v. Berryhill*, 874 F.3d 648, 654-655, (9th Cir. 2017).  This

does not mean the ALJ was permitted to dismiss Nurse Neibling's opinions out of hand.[5]  Under

the regulations, an ALJ is required to consider "other" medical source opinions and, where the

opinion may have an effect on the outcome of the case, explain the weight given to such opinions

or otherwise discuss the opinions in sufficient detail to allow a subsequent reviewer to follow the

ALJ's reasoning.  20 C.F.R. §§ 404.1527(f) and 416.927(f).  In other words, an ALJ's must

provide "germane" reasons before discounting the relevant opinions of such sources.  *Britton v.

Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

III. <u>The ALJ's Evaluation of Nurse Neibling's Mental Medical Assessment</u>

In this case, the ALJ elected to afford Nurse Neibling's opinions about Petitioner's

functioning "little weight."  AR 27.  At the outset, it is important to note the context in which the

ALJ made this determination.  Prior to discussing Nurse Neibling's mental medical assessment,

the ALJ found that Petitioner suffered from multiple severe mental health impairments.  AR 20.

The ALJ confirmed that Petitioner had been diagnosed with and treated for bipolar disorder,

---

[5] Petitioner contends that the ALJ "inappropriately rejected [N]urse Neibling's opinions because he was 'not an acceptable medical source.'"  Pt.'s Br. at 16 (Dkt. 20).  The record, however, does not support this conclusion.  While the ALJ noted that Nurse Neibling was not an acceptable medical source, the ALJ did not summarily disregard Nurse Neibling's opinions on these grounds.  AR 27.  After correctly identifying Nurse Neibling as an "other" medical source, the ALJ appropriately considered the consistency and supportability of Nurse Neibling's opinions in accordance with 20 C.F.R. §§ 404.1527(c)(3-4) and (f)(1) and stated how much weight he was giving the opinions as required by § 404.1527(f)(2).  AR 27.

personality disorder, depression, and anxiety.  AR 25.  The ALJ acknowledged that Petitioner

had been hospitalized in 2015 due to a suicide attempt.  AR 25-26.  The ALJ found that this

history indicated Petitioner had "some degree of limitation," including that she "cannot interact

with the public as part of her job," and that her "depression and anxiety would preclude her

ability to perform complex or detailed tasks."  AR 26.  In short, the ALJ accepted that Petitioner

suffered from serious mental health conditions that impacted her ability to engage in work-

related mental activities.

In analyzing Nurse Neibling's opinions, therefore, the ALJ's focus was not on whether

Petitioner's mental functioning is limited by mental health disorders, but how seriously and to

what extent these disorders subverted Petitioner's work capabilities.  Thus, while the ALJ issued

an RFC consistent with some of the more moderate limitations Nurse Neibling noted (e.g.,

limiting Petitioner to simple tasks), the ALJ refused to accept Nurse Neibling's more pessimistic

opinions.  For example, the ALJ rejected Nurse Neibling's opinion that Petitioner would miss

work more than four days a month, would be off task 15% of the workday, and would be

markedly limited in the areas of social functioning and concentration, persistence, and pace.  AR

27.  The Court agrees with Respondent that the ALJ provided sufficiently germane reasons to

support this decision.

     *a.  It was not unreasonable for the ALJ to conclude that Nurse Neibling's mental
     medical assessment reflected more severe limitations than his treatment records.*

One of the reasons the ALJ provided for discounting Nurse Neibling's opinions was

inconsistencies between these opinions and Nurse Neibling's own treatment records.

Specifically, the ALJ found that that Nurse Neibling's opinions were "not consistent with his

own treatment notes" which "show[ed] [Petitioner] responding well to the use of medications."

AR 27.  In addition, the ALJ cited to Nurse Neibling's own mental status exam findings as

**MEMORANDUM DECISION AND ORDER - 11**

conflicting with his opinions.  The ALJ found that these exams with showed Petitioner was "anxious, depressed, and [had] labile mood/affect," but revealed "little else in the way of abnormalities."  *Id.*  To support these finding, the ALJ cited to the following portions of Nurse Neibling's treatment records:

- All but one mental status exam conducted by Nurse Neibling at Petitioner's eight visits.  These exams consistently showed that despite having depressed, anxious, and labile moods, Petitioner was "alert and oriented," with "fair" grooming and hygiene, "normal" movement and speech, linear thoughts, grossly intact or "fair" memory, "fair" attention and concentration, and no loose associations.  AR 1196, AR 1201, AR 1205; AR 1209; AR 1212; AR 1216; AR 1220; AR 1223-1224.[6]

- An October 2, 2017 visit where Petitioner (i) reported that the medication changes made at the last visit "were helpful," (ii) endorsed some continuing nightmares, but explained that the worst nightmares were "gone," (iii) stated that her mood and energy level were "improved," (iv) and indicated that her anxiety had been improved until two weeks ago, when things became "rough" due to psychosocial stressors.  AR 1204.

- A January 15, 2018 visit where Petitioner (i) stated she was feeling more depressed and agitated, (ii) explained that she quit her part-time job working in a hospital kitchen because she was sore "all the time," and (iii) reported that her "overall sleep" had been good.  AR 1215.  Nurse Neibling's summary of

---

[6] For Petitioner's second, fifth, and final visits, the ALJ appears to have miscited the page of the transcript containing Nurse Neibling's mental status exam.  *Compare* AR 26 *with* AR 1201, 1212, 1223-1224.  The Court uses the correct citations.  The ALJ also neglected to cite the mental status exam from Petitioner's seventh and penultimate visit.  AR 1220.  This exam, however, was no different than the other exams the ALJ did cite.  *Id.*

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner's complaints describes Petitioner's depression as "moderate" with some suicidal ideation in the last few weeks. *Id.*

- A February 2, 2018 visit where Petitioner (i) stated her medication were working "better," (ii) reported "moderate anxiety leading up to medical appointments," but confirmed her "overall" anxiety "had not been too bad," and (iii) described "having some issues" with waking up in the night, but no current trouble with nightmares. AR. 1218.

AR 26-27. Petitioner has not shown that the ALJ's interpretation of these records was irrational.

Petitioner emphasizes that Nurse Neibling's records show she continued experiencing intermittent suicidal ideation, occasional nightmares, and panic attacks from July 2017 to February 2018. Pt.'s Br. at 18 (Dkt. 20). In other words, Nurse Neibling's treatment notes clearly indicate that Petitioner was continuing to experience "problematic symptoms" despite treatment. *Id.* Had the ALJ refused to accept this fact, Petitioner would have a strong argument for reversal. This is not, however, what happened. The ALJ agreed that Petitioner was continuing to have mental health symptoms that seriously limited her ability to work, including restricting her to simple, routine tasks. AR 23-24. The issue on review is whether the ALJ erred in refusing to accept Nurse Neibling's view that Petitioner symptoms were even more debilitating.

In making this finding, the ALJ did not mischaracterize the record or single out a few isolated instances of improvement and treat them as a basis for concluding Petitioner capable of working without regard to the broader treatment context. As part of evaluating Nurse Neibling's opinions, the ALJ cited to at least one page of the record for every single visit Petitioner had with

Nurse Neibling.  AR 26.[7]  In other words, the ALJ considered the entire treatment history. [8]

Based on these records, it was not unreasonable for the ALJ to conclude that medication

alleviated Petitioner's symptoms to the point where she could engage in simple work-related

mental activities.  AR 1199-1202 (nightmares improved, but still present; mood "notably

improved;" sleeping "much better;" and depression and anxiety, not gone, but "significantly

better"); AR 1204 (medication changes "helpful," energy and mood improved, and worst of the

nightmares gone); AR 1207 (still having occasional nightmares, but "not severe," and

"reportedly doing really quite well" and planning to return to work part-time); AR 1211

(Petitioner's nightmares increased after she reduced her medication);  AR 1218 (after a period

where Petitioner was struggling more, in part due to the death of her father, Petitioner reported

that the medication changes Nurse Neibling made at the last visit were "working better" and that

overall her anxiety was not "too bad," and that she was not currently having any trouble with

nightmares); AR 1222-1224 (increasing Petitioner's medications to treat a flareup in her

symptoms of anxiety and panic attacks).  The ALJ also reasonably concluded that Nurse

Neibling's mental status exams never revealed the kind of abnormalities that would suggest

---

[7] While the ALJ did not individually summarize each visit, that is not required.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (when interpreting the record, the ALJ does not need to "discuss every piece of evidence"); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not expected to "draft dissertations when denying benefits").

[8] In this regard, this case is distinguishable from *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) and the other cases Petitioner cites to support his argument that the ALJ improperly weighed the evidence regarding her mental health functioning.  In *Garrison*, the Ninth Circuit found that "[r]ather than describe [the claimant's] symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [the claimant]."  *Id.* at 1018.  Here, by contrast, the ALJ considered the entire treatment record and used examples that were reasonably reflective of the "broader development" of Petitioner's condition as *Garrison* requires.  *See id.*

**MEMORANDUM DECISION AND ORDER - 14**

marked impairments in social functioning and concentration as indicated on his mental medical assessment.  AR 1196, AR 1201, AR 1205; AR 1209; AR 1212; AR 1216; AR 1220; AR 1223-1224.

The records Petitioner cites to counter the ALJ's reasoning are not so conclusive as to render the ALJ's findings unreasonable or unsupported by substantial evidence.  First, Petitioner points out that she continued to experience suicidal ideation despite treatment.  Pt.'s Br. at 17-18 (Dkt. 20).  But the very records Petitioner cites shows that her suicidal ideation was intermittent, and she was, on average, doing "significantly better" with her anxiety and depression.  AR 1201-1201; *see also* AR 1211 (despite an uptick in her depression around the holidays and after the death of her father, Petitioner was not endorsing any suicidal ideation as of December 13, 2017).

Second, Petitioner maintains she was continuing to suffer ongoing nightmares and increased stress during the treatment period.  Pt.'s Br. at 18 (Dkt. 20).  The records Petitioner cites to support this conclusion, however, paint a more complex picture.  These records show that while her nightmares were not eliminated by treatment, they were notably improved.  AR 1199, 1204, 1218.  These records also show that Petitioner's was handling the life stressors she faced with reasonable fortitude.  While Petitioner faced several serious personal hurdles during the treatment period, including the death of a beloved dog and the death of her father, Petitioner nevertheless reported that she was "doing better," having only "moderate" depression during her worst periods, and experiencing a relatively normal level of grieving.  AR 1199-1202, 1205, 1205, 1207, 1209.

Third, Petitioner suggests she had to quit her part-time job due to increased mental health symptoms.  Pt.'s Br. at 18 (Dkt. 20).  This is not an accurate portrayal of the record.  Petitioner told Nurse Neibling that she had been "on edge all the time" since her father "passed away," not

**MEMORANDUM DECISION AND ORDER - 15**

because she resumed working part-time.  AR 1211.  The only justification Petitioner provided for later leaving this part-time job was that she was "sore all the time," not because of intrusive mental health issues.  AR 1215.

Finally, Petitioner highlights that she reported daily panic attacks at a visit to Nurse Neibling on February 23, 2018.  Pt.'s Br. at 18 (Dkt. 20).  But this was only one visit, which (i) contained little information about how Petitioner's panic attacks impact her daily functioning, (ii) described Petitioner's anxiety as moderate, not severe, and (iii) revealed no changes in Petitioner's mental status exam (*i.e*, her thinking, concentration, and judgment) due to her increased anxiety.  AR 1223.

In drawing these comparisons, the Court does not suggest that the record definitively establishes that Petitioner could work or otherwise forecloses Petitioner's preferred reading of Nurse Neibling's treatment records.  Minds may differ on whether the ALJ or Petitioner has posited a more persuasive reading of the evidence.  It is not, however, the Court's role to resolve such a dispute.  In determining whether substantial evidence supports and ALJ's findings, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  As long as the ALJ applies the correct legal standards and the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, while the ALJ may have interpreted Nurse Neibling's records differently than the Court would have, the Court cannot say that the ALJ's conclusion that there was tension between Nurse Neibling's records and Nurse Neibling's medical assessment was irrational or unsupported by substantial evidence.

**MEMORANDUM DECISION AND ORDER - 16**

      *b.   Inconsistencies between Nurse Neibling's opinions and the mental status exams of other providers were a germane reason for rejecting Nurse Neibling's opinions.*

The second reason the ALJ gave for rejecting Nurse Neibling's opinions was that these opinions were inconsistent with the generally normal mental status findings of the other practitioners who saw Petitioner after her amended disability onset date.  AR 27.  Petitioner does not attack this finding directly.  Nor could she.  The ALJ cited eight mental status evaluations, spanning from March 2017 through February 2018, none of which documented marked abnormalities or limitations in attention or social interaction.  These evaluations are as follows:

- On March 23, 2017, one of Petitioner's mental health treatment providers found that she was oriented to time, place, and person, appropriately dressed, pleasant and cooperative, and a "little hyper." In addition, Petitioner had a euthymic mood; no hallucinations, paranoid feelings, or delusions; linear and coherent thought processes; no suicidal ideation; grossly intact memory; and fair insight and judgment.  AR 1069.

- On April 11, 2017, a doctor who treated Petitioner for knee pain at a family medicine clinic found that Petitioner's psychiatric presentation was "normal."  AR 1080.

- On April 24, 2017, Petitioner sought emergency department treatment for knee pain. Records of this visit showed that Petitioner had a normal mood, normal behavior, and normal judgment and thought content.  AR 1242.

- On May 4, 2017, Petitioner once again sought treatment for knee pain.  The doctor who saw her documented that she was "positive for" depression and suicidal ideas, and was anxious and had insomnia, but noted that she was "negative for" hallucinations or memory loss, and was oriented to person, place, and time.  AR 1247.

**MEMORANDUM DECISION AND ORDER - 17**

- On July 15, 2017, emergency department records showed that Petitioner was oriented to person, place, and time, had a normal mood, normal behavior, and normal thought content and judgment.  AR 1269.

- On August 2, 2017, emergency department records showed Petitioner has normal mood and was calm.  AR 1280.

- On September 12, 2017, emergency department records showed Petitioner was alert and had a normal mood.  AR 1296.

- On February 12, 2018, Petitioner saw a chiropractor and nurse practitioner for back pain.  This provider noted that Petitioner's mood was "neutral," her speech was normal, and that she was "articulate" and "coherent."  AR 1187.

Petitioner does not address the substance of these evaluations in her briefing or explain why the ALJ was wrong to conclude that these exams do not fully align with Nurse Neibling's more extreme findings.

Instead, Petitioner summarily argues that mental health symptoms may "wax or wane" and that the ALJ should have given more weight Petitioner's preferred evidence, namely Petitioner's much earlier hospitalizations and Dr. Jung Kim's reviewing opinions, than the above mental status exams.  Pt.'s Br. at 17-18, 20-21 (Dkt. 20).  These arguments are unmoored from the facts of this case.

The evidence that Petitioner contends compels a finding that she was disabled all predates Petitioner's amended disability onset date.  For example, Petitioner stresses that she was hospitalized or sought hospital treatment in 2009, 2011, 2012, and 2015 for mental health crises and cites to records from the 2015 hospitalization to argue that the ALJ mischaracterized her mental status as of 2017-2018.  Pt.'s Br. at 17-18 (Dkt. 20) and Pt.'s Reply at 2 (Dkt. 25).

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's argument ignores the substantial passage of time between these events and Petitioner's alleged disability onset date.  Where, as here, a claimant's mental health records span periods of working and periods of alleged disability, it is not unreasonable for the ALJ to concentrate on and favor the records documenting Petitioner's mental functioning during the relevant period of alleged disability.  *See Ahearn v. Saul*, 988 F.3d 1111, 1118 (9th Cir. 2021) (holding that an ALJ did not err in giving limited weight to the "remote" assessment of an examining psychologist because "[m]edical opinions that predate the alleged onset of disability are of limited relevance").

Petitioner's arguments about the opinions of Dr. Jung Kim suffer from the same flaw. Petitioners argues that the ALJ should have credited Nurse Neibling's opinions because they were consistent with the opinions of examining psychiatrist, Jung Kim.  Pt.'s Br. at 20-21 (Dkt. 20).  The ALJ, however, independently discredited Dr. Kim's finding of mental disability because (i) Dr. Kim rendered the opinion after a single review of the file and (ii) Dr. Kim found that Petitioner was unable to work due to mental impairments even though she was (unbeknownst to Dr. Kim) engaging in substantial gainful employment at the very time Dr. Kim issued his opinion.  AR 28.  At the ALJ correctly pointed out, "this alone shows that Dr. Kim's opinion was not correct."  *Id.*  These findings were more than reasonable.

In summary, the ALJ rationally and appropriately chose to rely on the records from the period of alleged disability (2017-2018) when assessing how Petitioner was doing mentally during this time frame.  Petitioner has not shown that the ALJ's reading of these records was unreasonable or that the ALJ selectively cited a handful of isolated and uncharacteristically positive mental status exams from this period to find that Petitioner was capable of simple work.

**MEMORANDUM DECISION AND ORDER - 19**

Here, the ALJ cited and summarized 15 mental status evaluations of Petitioner (seven conducted by Nurse Neibling and eight conducted by other medical professionals) spanning the entire period of alleged disability.  AR 26.  These examinations were regularly spaced over the twelve-month period from the beginning of Petitioner's alleged disability (February 2017) to the end of the medical record (February 2018), so as to give a broad picture of Petitioner's functioning.  There is no evidence, nor does Petitioner present any argument, that these exams were cherry-picked exclusively from periods when Petitioner's mental health symptoms were in remission.  In the absence of such a showing, the Court will not replace the ALJ's reasoned interpretation of the exams with its own reweighing of the evidence.  *See Tommasetti*, 533 F.3d at 1038 (where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings).  Inconsistencies between Nurse Neibling's opinions and the mental status examinations conducted during the period of alleged disability were a germane reason to reject Nurse Neibling's findings of marked mental limitations.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (Inconsistency between the opinions of a treating physician and the notes of other medical providers can be a specific and legitimate reason for an ALJ to discredit the opinions of the treating physician).[9]

---

[9] Because the ALJ provided at least two germane reasons for rejecting Nurse Neibling's assessment, namely inconsistency with his own treatment notes and inconsistency with the examinations of other providers, the Court need not consider whether the ALJ's view that the assessment was "not explained in any significant detail" also supported the rejection.  Any error in this particular reason was harmless.  *See Batson*, 359 F.3d at 1197 (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where the ALJ provided several other valid reasons for the decision).

**MEMORANDUM DECISION AND ORDER - 20**

   c.   *The ALJ provided sufficient explanation of his decision as required by 20 C.F.R.*
        *§§ 404.1527(f) and 416.927(f).*

As part of her challenge to the ALJ's decision, Petitioner repeatedly asserts that the ALJ did not justify his treatment of Petitioner's preferred evidence with sufficient detail to withstand appeal.  In other words, Petitioner maintains that even the record could support the ALJ's findings, this Court must reverse the decision in order to require the ALJ to provide additional explanation of his reasoning.  Petitioner heavily emphasizes this argument in her reply, where she insists that the ALJ erred in "fail[ing] to explain why the evidence that was consistent with Nurse Neibling's opinion did not support it."  Pt.'s Reply at 1 (Dkt. 25).  Petitioner's argument is both factually and legally flawed.

As a factual matter, the ALJ did discuss and consider the evidence Petitioner claims the ALJ ignored.  First, the ALJ acknowledged that Petitioner had a history of psychiatric hospitalization.  AR 25-26 (noting that Petitioner was hospitalized for seven days in 2015 after a suicide attempt).  The ALJ relied on this history in finding Petitioner had serious mental health limitations restricting her to simple work without public contact.  AR 26.  The ALJ's decision indicated, however, that the ALJ did not find Petitioner's prior hospitalization dispositive of disability because Petitioner had not been hospitalized or seen in the emergency room for acute anxiety or depressions since her alleged disability onset date.  *Id.*  Second, as outlined above, the ALJ gave similarly cogent reasons for discounting the opinions of Dr. Kim.  *See supra* page 19.

Petitioner's argument that further justification was required seriously misunderstand the nature of substantial evidence review.  Petitioner asks the Court to remand the decision for the ALJ to "provide . . . an explanation why the probative evidence did not support" Nurse Neibling's mental medical assessment.  Pt.'s Reply at 3 (Dkt. 25).  The existence of evidence supporting an alternative outcome, however, is not a basis for reversing an ALJ's decision and is

**MEMORANDUM DECISION AND ORDER - 21**

not something an ALJ needs to artificially explain away for a decision to be reasonable.  *See Tommasetti*, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts). In other words, the fact that some evidence in the record can be read as supporting Nurse Neibling's opinions does not show that the ALJ erred in the discussion or treatment of this evidence.

When reviewing an ALJ's reasoning, the question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence supports the ALJ's findings.  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  Here, the ALJ considered all the mental health evidence, recognized that there were legitimate tensions within this evidence about how seriously Petitioner's mental health impairments undermined her ability to work, and gave germane reasons for finding Nurse Neibling's opinions on this topic unpersuasive.  Nothing more was required.

## **ORDER**

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 20) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: November 10, 2021

Raymond E. Patricco
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**